# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ROBBI DARYL BARNETT,

      Plaintiff,

vs.

                                  CASE NO: 6:11-cv-00829-ACC-SPC

MICHAEL J. ASTRUE
Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

## TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on the Plaintiff Robbi Daryl Barnett's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance Benefits and Supplemental Security Income payments (Doc. # 1) filed on May 18, 2011, in the Middle District of Florida, Orlando Division. The action was referred to the United States Magistrate Judge for appropriate proceedings (Doc. #16) in accordance with Local Rule 6.01(c)(21). The Plaintiff filed his Memorandum in Opposition to the Commissioner's decision (Doc. # 18) on August 22, 2011. The Commissioner filed the Memorandum in Support of the Commissioner's Decision (Doc. # 20) on October 5, 2011. The case was transferred to the Ft. Myers Division on February 24, 2012. Thus, the Motion is now ripe for review.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff filed an application for a period of Disability and Disability Insurance Benefits on March 20, 2008. (Tr. 10). The Plaintiff's claim was denied initially on August 5, 2008, and upon reconsideration on December 18, 2008. (Tr. 93, 96, 106, 108). The Plaintiff timely filed a written request for hearing on January 9, 2009. (Tr. 112). On November 5, 2009, a hearing was held before the Honorable John D. Thompson, Jr., Administrative Law Judge ("ALJ"). (Tr. 7−25). The ALJ issued an unfavorable decision on December 1, 2009. (Tr. 7−25). The Plaintiff filed a Request for Review on February 16, 2010. (Tr. 149). The Appeals Council denied the Plaintiff's Request for Review. (Tr. 1−6). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The Plaintiff was born on February 15, 1969, making the Plaintiff 36 years of age on the alleged disability onset date. (Tr. 48). The Plaintiff alleges an onset disability date of September 11, 2005. (Tr. 156). The Plaintiff has a tenth grade education. (Tr. 48). The Plaintiff has a past relevant work as a sales person and construction worker. (Tr. 18, 204−05, 210−12, 229−36, 307). The Plaintiff alleges disability due to RSD (reflex sympathetic dystrophy) in his left wrist and hand, which limits his ability to lift and carry things with his left, dominant hand. (Tr. 203).

Plaintiff injured his left wrist in a work accident on September 11, 2005.  (Tr. 31, 581, 591).  Plaintiff began seeing Jeffrey Deren, M.D. for treatment of his left wrist on November 1, 2005 (Tr. 578−81) and continued treatment with Dr. Deren until December 2007. (Tr. 536−37).  In his initial examination, Dr. Deren noted Plaintiff complained of significant pain and had marked limitations in range of motion, but there was no motor weakness or atrophy.  (Tr. 580).  Dr. Deren treated Plaintiff with a cortisone injection and released him to work without use of his left upper extremity.  (Tr. 578).  Dr. Deren later prescribed narcotic pain medication and recommended that Plaintiff remain off work.  (Tr. 570, 576).

Dr. Deren performed surgery on Plaintiff's left wrist in February, June, and November 2006.  (Tr. 32, 591−92).  Plaintiff continued to report pain following the surgeries, but at times Dr. Deren observed good range of motion and strength and less tenderness and Plaintiff reported that his symptoms were improved.  (Tr. 540, 560−62, 564).  Dr. Deren noted that he believed that Mr. Barnett's pain was some kind of complex regional pain symptom and is not likely orthopedic. (Tr. 539).  Therefore, Dr. Deren recommended Plaintiff see a pain specialist.  (Tr. 539−43, 573, 575).  In December 2007, Dr. Deren opined that Plaintiff was capable of light duty work.  (Tr. 536).  Alexander C. Jungreis, M.D. with the National Pain Institute (NPI) began treating Plaintiff in January 2006 as his pain management specialist. (Tr. 569−72, 600).  However, Plaintiff's treatment notes from Dr. Jungreis begin in July 2007. (Tr. 328−31).  Dr. Jungreis' treatment notes from July 2007 indicate diagnoses of pyschogenic pain, RSD of the upper limb, and mononeuritis of the upper limb.  (Tr. 330).  Dr. Jungreis prescribed Plaintiff medication to control his symptoms including Hydrocodone, Celebrex, and Ultram.  (Tr. 330).  Plaintiff reported that his pain was 6 out of 10. (Tr. 329).  Dr. Jungreis' physical examination

showed Plaintiff had no edema (swelling) of the wrist and he demonstrated evidence of allodynia (pain resulting from a stimulus that would not normally provoke pain). (Tr. 330). Dr. Jungreis stated Plaintiff was "temporarily disabled pending completion of the course of treatment." (Tr. 331). Dr. Jungreis' subsequent treatment notes through October 2008 yielded similar findings. (Tr. 332−88, 430−33).

In December 2007, Plaintiff first reported a decrease in the intensity of his pain and that he was improving with the current pain medication. (Tr. 348). Thereafter, Dr. Jungreis noted that Plaintiff's pain had improved by 60–90% with medication. (Tr. 352, 356, 360, 364, 368, 372, 377, 385, 430). Overall, Dr. Jungreis noted Plaintiff was receiving good pain relief with no side effects. (Tr. 351, 355, 359−60, 363, 367, 371, 377, 381). Beginning March 2008, Plaintiff no longer had a diagnosis of mononeuritis. (Tr. 366). Beginning May 2008, Dr. Jungreis noted that Plaintiff's work status was full time light duty work. (Tr. 380, 384, 388, 433).

In June 2008, Dr. Jungreis noted that Plaintiff "continues to use his left hand/arm as much as possible" (Tr. 381) and in July 2008 another NPI physician noted that Plaintiff was trying to work part-time with a friend. (Tr. 385). Also in July 2008, another NPI physician noted atrophy of Plaintiff's left hand, wrist, and forearm, severely decreased range of motion, and decreased grip strength. (Tr. 387). In October 2008, Dr. Jungreis first noted Plaintiff was having more difficulty extending the third, fourth and fifth digits of his left hand. (Tr. 430, 432). Additional treatment notes from NPI from February to August 2009 yielded similar findings, including that Plaintiff's work status was full time light duty. (Tr. 464−94). Plaintiff at times reported his pain as low as 3 out of 10 (Tr. 483) and by June 2009 reported his pain was normally a 4 out of 10. (Tr. 464, 468, 472).

In October 2009, Dr. Jungreis opined that Plaintiff had no limits on his ability to sit, stand, and walk during a work day. (Tr. 601). Dr. Jungreis opined Plaintiff would however need to take unscheduled breaks because of muscle weakness, pain and numbness. (Tr. 602). Dr. Jungreis opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, but that he had significant limitations fingering and handling objects. (Tr. 602−03). Dr. Jungreis opined Plaintiff's pain would occasionally interfere with his attention and concentration. (Tr. 603).

Plaintiff received primary care in October 2008, January 2009 and March 2009 from Jose Gierbolini, M.D. (Tr. 456−63). Dr. Gierbolini noted Plaintiff's diagnosis of RSD and Plaintiff's report that he received relief from pain with medication. (Tr. 456, 458, 461).

*Administrative Law Judge's Decision*

Upon consideration of the record, the Administrative Law Judge (ALJ) found the Plaintiff has not engaged in substantial gainful activity since September 11, 2005. (Tr. 12). The ALJ found the Plaintiff has the following severe impairment: complex regional pain syndrome (CRPS) of the left wrist (20 CFR 404.1520(c) and 20 CFR 416.920(c)). (Tr. 12). The ALJ further found the Plaintiff's impairment of depression was non-severe. (Tr. 12). However, the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 14). After careful consideration of the entire record, the ALJ concluded the Plaintiff has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is able to sit for 6 hours in an 8 hour day and stand/walk up to 6 hours in an 8 hour day. (Tr. 14). With his right upper extremity, the Plaintiff is able to lift/carry 20 pounds

occasionally and 10 pounds or less more frequently as well as push/pull frequently within these weight limits. (Tr. 14). With his left upper extremity, he is limited to lifting/carrying 5 pounds occasionally and less than 5 pounds frequently as well as limited to push/pull only up to 5 pounds occasionally. (Tr. 14). The Plaintiff is able to reach and to perform gross manipulation frequently. (Tr. 14). Plaintiff is able to do fingering (fine manipulation) and feeling on an occasional basis with his left upper extremity. (Tr. 14). The Plaintiff should not be exposed to temperature extremes or to concentrated amounts of vibration. (Tr. 14). Plaintiff is precluded from working at unprotected heights or around dangerous machinery. (Tr. 14). He is also precluded from climbing ladders/ropes/scaffolds or crawling. (Tr. 14).

The ALJ also concluded the Plaintiff was unable to perform any of his past relevant work (20 CFR 404.1565 and 416.965). (Tr. 18). The Plaintiff was born on February 15, 1969 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). (Tr. 19). At the time of the decision, the Plaintiff was 40 years of age. (Tr. 19). The Plaintiff has a limited education and is able to communicate in English. (Tr. 19). The ALJ determined transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills (See SSR 82−41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 19). Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy the Plaintiff can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a). (Tr. 19). Therefore, the Plaintiff was found to have not been under a disability, as defined in the Social Security Act from September

11, 2005, the date the application was filed, through the date of the decision (20 CFR 404.1520(g).  (Tr. 20).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence.  Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[3]  20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

*Step 1*.  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2*.  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3*.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4*.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5*.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence or substitute its judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must

be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505−404.1511.

The Plaintiff sets forth three main issues. First, Plaintiff asserts that the ALJ did not apply the correct legal standards to Plaintiff's complex regional pain syndrome. Second, Plaintiff asserts that the ALJ failed to apply the correct legal standards to the opinion evidence. Third, Plaintiff claims that the ALJ failed to apply the correct legal standards to Mr. Barnett's pain testimony. In response, the Commissioner argues the ALJ's decision is supported by substantial evidence in the record and therefore should be affirmed. The Court will consider each of these issues in turn.

## *1. Whether the ALJ Applied the Correct Legal Standards to Plaintiff's Complex Regional Pain Syndrome (CRPS)*

### *A. CRPS and SSR 03-2p*

The Plaintiff argues that the ALJ failed to apply the correct legal standards to his CRPS and to his mental impairment. Specifically, the Plaintiff argues that the ALJ failed to apply the standards set out in SSR 03-2p. The Commissioner contends that although the ALJ did not cite to SSR 03-2p, his decision that Plaintiff is not disabled is consistent with SSR 03-2p.

The Social Security Administration has an entire Social Security Ruling, i.e., SSR 03-2p, devoted to evaluating cases involving CRPS / RSDS. According to SSR 03-2p:

> CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome

that the degree of pain reported is out of proportion to the severity
of the injury sustained by the individual.

SSR 03-2p further provides that claims involving CRPS are adjudicated using the sequential evaluation process, just as for any other impairment. It directs that CRPS is a medically determinable impairment if the claimant persistently complains of pain and has one of several clinically documented signs. After the ALJ determines whether the claimant's CRPS is a medically determinable impairment, SSR 03-2p directs the ALJ to determine whether it is a severe impairment. In making this determination, SSR 03-2p directs the adjudicator to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.

In assessing the severity of the CPRS, SSR 03-2p and SSR 96-7p provide the same standard for evaluating the claimant's symptoms before taking them into account. Both Rulings require the adjudicator to evaluate the intensity, persistence, and limiting effects of the individual's symptoms. When the individual's statements are not substantiated by the objective medical evidence, the adjudicator is directed by both Rulings to make a finding on credibility based on the entire case record, including medical signs and laboratory findings.

At Step Two of the sequential evaluation process, the ALJ found Plaintiff's CRPS to be a severe impairment. (Tr. 12, finding no. 3). He acknowledged that the CRPS "causes more than minimal limitations on the [Plaintiff's] ability to work." (Tr. 12). The ALJ then proceeded to evaluate the intensity, persistence, and limiting effects of Plaintiff's CRPS to determine Plaintiff's RFC. In making his findings, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 14).

The ALJ carefully evaluated the Plaintiff's claims. The ALJ noted that the Plaintiff testified that his primary care physician, Dr. Gierbolini, "treats him for his left hand . . . [and] is prescribing him medications that include Zoloft, Neurontin, Hydrocodone, Ultram, and Celebrex." (Tr. 15). He noted that the Plaintiff "admitted he has been taking the same medications for some time now and that they were helpful." (Tr. 15). Regarding his left hand, the Plaintiff testified that his fingers are curling up, and that he has problems with gripping and holding onto things without dropping them. His pain was traveling from his left hand up through his arm and into his shoulder. The ALJ noted that the Plaintiff "admitted that it had been recommended that he attend physical therapy for his left hand but . . . that he cannot afford insurance to pay for such physical therapy." (Tr. 15).

The ALJ also noted that the Plaintiff testified that his left wrist was the only body part which was the basis for his disability. Plaintiff agreed that areas other than his left wrist, "including his back, neck, shoulders and legs are all fine [and] that he did not experience significant difficulties in sitting, standing, and walking." (Tr. 15). The ALJ also took the Plaintiff's daily activities—driving, light housework, cooking, dressing, gardening—into consideration in reaching his conclusion that the Plaintiff's CRPS was not as limiting as the Plaintiff claimed.

The ALJ relied heavily on the testimony of Robert Karsh, M.D., who "testified that he had carefully reviewed the entire evidence of record." (Tr. 16). Dr. Karsh explained that the Plaintiff had torn his triangular fiber cartilage in his left wrist in a work-related injury on September 11, 2005. (Tr. 16). In July 2008, the Plaintiff exhibited symptoms of the wrist and hand consistent with CRPS: atrophy of muscles, decreased range of motion, and decrease in

strength. (Tr. 16). The Plaintiff has developed a partial contracture of his left third, fourth, and fifth digits along with atrophy, weakness, and pain in his left forearm and wrist. (Tr. 17).

The ALJ devotes nearly a full page to discussing Dr. Karsh's testimony about Plaintiff's range of motion and limitations in his left wrist. Dr. Karsh noted that "on April 4, 2008, . . . the [Plaintiff] reported using his left arm 'as much as possible.' . . . [O]n December 15, 2008, . . . he was able to write with his left hand and . . . to mow the lawn for four hours at a time, [and] . . . in January 2008, the [Plaintiff] was unrestricted in his ability to button clothing with his left hand." (Tr. 17). The ALJ acknowledged that "Dr. Karsh testified that the [Plaintiff] would not operate hand controls quite as well with his left hand." (Tr. 17). Dr. Karsh also felt that the Plaintiff could do reaching and handling (gross manipulation) on a frequent basis (six hours). He testified that fingering (fine manipulation) would be limited to an occasional basis. (Tr. 17). The ALJ noted that Dr. Karsh

> opined that the [Plaintiff] should not be exposed to concentrated temperature extremes or to concentrated amounts of vibration[, and] . . . felt that the [Plaintiff] should not work at unprotected heights or with dangerous moving machinery and that he was precluded from climbing of ropes, ladders, or scaffolds, or any crawling.

(Tr. 17). The ALJ considered this in conjunction with the Plaintiff's admittance "that he was released [for work] by his various treating physicians." (Tr. 15).The ALJ also independently noted that following a surgical repair procedure in February 2006, the Plaintiff's left wrist demonstrated a normal range of motion of his fingers with no ulnar neuropathy present. (Tr. 16).

While the ALJ did not cite to SSR 03-2p, his decision makes it clear that he followed the sequential steps as well as the procedure laid out in SSR 96-7p which is identical in substance to the procedure set forth in SSR 03-2p. The ALJ considered the intensity, persistence, and limiting effects of the Plaintiff's CRPS and found the Plaintiff capable of light work. (Tr. 18). Thus, the

Undersigned recommends that the ALJ did apply the correct legal standards to the Plaintiff's CRPS.

## B. *Mental Impairment and SSR 03-2p*

The ALJ found that the Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the [Plaintiff]'s ability to perform basic mental work activities and is therefore non-severe." (Tr. 12). The Plaintiff alleges that the ALJ also failed to apply the correct legal standard to the mental impairment caused by his CRPS. The Commissioner responds that the ALJ's finding that Plaintiff's mental impairment of depression is not severe is supported by substantial evidence.

In arriving at his conclusion, the ALJ considered the testimony of Carlos Kronberger, Ph.D., a licensed clinical psychologist, who testified that he had reviewed the complete medical evidence of record. Dr. Kronberger testified that following Plaintiff's injury in 2005, "there is no record of any mental health services/treatment." (Tr. 13). He testified that Plaintiff has undergone three surgeries and "has been receiving anti-depressant as well as pain medication in the course of his recovery." (Tr. 13). The ALJ noted that a

> mental status exam revealed that the [Plaintiff] exhibited some problems with his mood. He described feelings of sadness and being worried about his finances. His energy level was normal. The [Plaintiff]'s self esteem was noted to be adequate. It was noted that the [Plaintiff] did get frustrated easily and has been most affected by changes in his prior lifestyle.

(Tr. 13). The ALJ discussed that mental status exam revealed that Plaintiff's "thinking was normal, speech was coherent, and there was no looseness of association." (Tr. 13). Dr. Kronberger noted that no concentration, memory deficits, or hallucinations were found, and testified that "he found no evidence of any severe mental impairment." (Tr. 13). The ALJ cited

the fact that "Dr. Kronberger concurred with the two state agency psychologists who previously determined that the [Plaintiff]'s mental impairment was non-severe." (Tr. 13).

In making his finding, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders. In the first functional area of activities of daily living, the ALJ found that the Plaintiff has a mild limitation:

> With regard to his daily activities, the [Plaintiff] was found to be living with his wife and stepson. The [Plaintiff] was able to prepare meals, go shopping, and drive a car. He was able to care for his daily needs. The [Plaintiff] was able to do light household chores. He admitted he enjoys gardening.

(Tr. 13). With regard to the second functional area of social functioning, the ALJ found that Plaintiff has a mild limitation: "While the [Plaintiff] testified his daily activities have decreased, he admitted that he has friends and attends church." (Tr. 13). In the third functional area of concentration, persistence, or pace, the ALJ found that the Plaintiff has a mild limitation: "There is some evidence that the [Plaintiff] has some difficultly doing activities such as completing household chores due to pain, however, he admitted he was still able to do them. Furthermore, the [Plaintiff] had previously reported that he was trying to work part-time with a friend." (Tr. 13).

Finally, in the fourth functional area of decompensation, the ALJ found that the Plaintiff has experienced no episodes of decompensation which have been of extended duration. The ALJ thus concluded, "Because the [Plaintiff]'s medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere." (Tr. 13-14). Thus, the ALJ's finding that Plaintiff's mental impairment is not severe is supported by

substantial evidence.  Because the ALJ found that it was not severe, his findings were consistent with SSR 03-2p.

<u>2. Whether the ALJ Failed to Give the Appropriate Weight to the Plaintiff's Treating Physicians and Articulate His Reasons For Doing So</u>

The Plaintiff argues that the ALJ improperly rejected the opinion of Drs. Jungreis, Deren, and Gierbolini, Plaintiff's treating physicians, and gave an undue amount of weight to the state agency physicians who never examined nor treated the Plaintiff.  The Commissioner replies that the ALJ's rejection of Dr. Jungreis' opinion is supported by substantial evidence, and that his treatment of the opinions of Drs. Deren and Gierbolini is not reversible error.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  20 C.F.R. § 404.1527 (d); <u>Lewis</u>, 125 F.3d at 1439-41; <u>Sabo v. Commissioner of Social Security</u>, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory.  <u>Edwards v. Sullivan</u>, 937 F.2d 580 (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); <u>Morrison v. Barnhart</u>, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  <u>Schnor v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987); <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

SSR 03-2p provides that a "medical source opinion that an individual is 'disabled' or . . . has a particular residual functional capacity (RFC) . . . is an opinion on an issue reserved to the Commissioner [which is entitled to no] special significant . . . because of its source." SSR 03-2p fn. 3. In other words, despite the unique nature of CRPS as a medical impairment, a treating source's opinion with respect to what an individual can do despite her impairment will be

evaluated under the usual standards set forth at 20 C.F.R. § 404.1527(d) and especially § 404.1527(e) ("medical source opinions on issues reserved to the Commissioner"). See e.g., Houston v. Astrue, 2010 WL 3620185 (W.D. Ky. Sept. 10, 2010) (adopting the report and recommendation by the Magistrate Judge).

At the hearing, Robert Karsh, M.D., an internist, testified that he had carefully reviewed the entire medical evidence of record, specifically the Plaintiff's physically-based medical difficulties.

> Based upon his review of the evidence of record, particularly those treatment notes/examination reports made by Dr. [Jungreis], Dr. Kirsh [sic] noted that, although the [Plaintiff] does have some disorganized motor function, the loss of such motor function is not to the extent that is required to meet or equal Listing 11.04B.

(Tr. 14).

Dr. Karsh testified to a discrepancy between the Plaintiff's claims and the records from Dr. Jungreis, Plaintiff's treating physician. Dr. Jungreis' records claim there are no findings after all of the Plaintiff's wrist examinations. (Tr. 16). Dr. Karsh noted that "[t]he records state that the [Plaintiff] had allodynia, which means he felt more pain from stimuli that does not ordinarily cause pain and that he was super sensitive to pain." (Tr. 16). Dr. Jungreis "tried to diagnose a reflex sympathetic disorder . . . but did not describe anything in all of his various examinations which would support this diagnosis with the physical findings offered." (Tr. 16). The ALJ noted that

> On July 11, 2008, treatment notes finally did describe findings of his left hand and wrist consistent with reflex autonomic dystrophy, which include atrophy of muscles, decreased range of motion and decrease in strength. Dr. Karsh opined that the [Plaintiff] had this reflex sympathetic dystrophy for some time but since Dr. [Jungreis] had noted that these symptoms were absent, Dr. Karsh could not opine when this diagnosis first appeared.

(Tr. 16).  Dr. Karsh also testified about the condition known as complex regional pain syndrome.  He told that ALJ that "this condition does not medically equal Listing 11.14 (peripheral neuropathy) which requires a serious disorganization of motor function."  (Tr. 17).

Dr. Karsh noted that a "[t]reatment note dated March 14, 2008, reveals that the [Plaintiff's] pain had been decreased by 60% with his present medical treatment regimen."  (Tr. 17).  In addition, Dr. Karsh testified that "on April 4, 2008, . . . the [Plaintiff] reported using his left arm 'as much as possible.' . . . [O]n December 15, 2008, . . . he was able to write with his left hand and . . . to mow the lawn for four hours at a time, [and] . . . in January 2008, the [Plaintiff] was unrestricted in his ability to button clothing with his left hand with reported improvement in his numbness noted on June 10, 2008."  (Tr. 17).  Dr. Karsh also noted that "on December 18, 2007, the [Plaintiff] was seen by Dr. Daren who noted that the [Plaintiff's] pain was out of proportion to any orthopedic findings but did not really imply that the [Plaintiff] was malingering."  (Tr. 17).

The ALJ stated that

> Dr. Karsh further testified that [the Plaintiff's] primary work related limitations would deal with his left upper extremity.  He testified that the [Plaintiff] would have some manipulative difficulties with his left hand due to CRPS, Type I condition, but that he could otherwise do the full range of light work.  Dr. Karsh opined that the [Plaintiff] was capable of 'full light duty' which includes sitting, standing, and walking for 6 hours each in an 8 hour day and that he is able to lift and carry 20 pounds occasionally and 10 pounds or less more frequently with his right hand and somewhat less with his left hand.

(Tr. 17).  Dr. Karsh reviewed the RFC that Dr. Jungreis completed.  He noted that "under the 'use of hands and fingers' section, 'n/a' was noted which did not make sense."  (Tr. 17).  Dr. Karsh felt that the Plaintiff "was capable of using both of his arms but with limitations on time and manipulation."  (Tr. 17).  The ALJ observed that "Dr. Karsh reiterated that all of the

treatment notes of Dr. [Jungreis] appear to have been copied from one visit to the next." (Tr.

17).

> Although Dr. Karsh felt that Dr. [Jungreis] was aware of the problem, it does not appear that he was aware of it from his contemporaneously prepared treatment notes/examinations until the RFC he was now offering. Dr. Karsh admitted that a person's condition can 'wax and wane' with this specific medical condition but he offered the opinion that the general trend was improved with time. Specifically, Dr. Karsh pointed to evidence in the record that supports improvement in which the [Plaintiff] reported a decrease of his pain by 60%.

(Tr. 17).

The ALJ rejected Dr. Jungreis' opinion because it "is not supported by the treating notes as was noted by Dr. Karsh during the hearing and is contrary to other expert medical opinions in the case file that are more persuasive." (Tr. 18). The ALJ considered the opinions of the State Agency physicians in accordance with SSR 96-6p. SSR 96-6 requires the ALJ to not only consider the program physicians' opinions because these physicians are considered experts, but the ALJ must also state, in his decision, the weight he has given to those opinions. See Wainwright, 2007 WL 708971 at *2; Goberman, 2001 WL 267209. Here, the ALJ gave the State Agency physicians' opinions greater weight "for several reasons." (Tr. 18).

> First, these are disability specialists who had the bulk of the evidence from the treating sources and consultative examiners that now comprise the official record in this case. They considered all of the objective facts at the time they rendered their opinion. Secondly, though they did not have at their disposal the [Plaintiff's] testimony, that testimony specifically as it relates to the [Plaintiff's] activities of daily living, was consistent with the residual functional capacity opined by the reviewing doctors to a significant degree. Finally, the evidence in total does support in general the conclusions put forth by the State Agency doctors. The evidence is part of the record and entitled to the same probative value accorded "expert opinion" evidence.

(Tr. 18).  Additionally, the ALJ also accorded the opinions of Drs. Keren and Karsh great weight "to the extent that they are consistent with the overall evidence of record including the FCE and the established residual functional capacity."  (Tr. 18).

After careful review of the record, the Undersigned finds that in regards to according weight to the physicians' opinions, the ALJ's opinion was supported by substantial evidence.

### 3. Whether the ALJ Applied the Correct Legal Standards to Plaintiff's Pain Testimony

The Plaintiff alleges that the ALJ failed to apply the correct legal standards to his testimony which satisfies the pain standard and supports disability.   In response, the Commissioner contends that the ALJ articulated explicit and adequate reasons for finding Plaintiff's statements of disabling pain not fully credible.

Pain is a non-exertional impairment.   Phillips v. Barnhart, 357 F.3d 1232, 1243 n. 11 (11th Cir. 2004).  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g. medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.   42 U.S.C. § 423 (d)(5)(A).   The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.   20 C.F.R. § 404.1528.   In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part pain standard.  Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can

be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561−62; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment. (Tr. 16).

At the hearing, the Plaintiff testified that the bulk of his disability was based upon the injury to his left wrist. (Tr. 15). The Plaintiff agreed "that his primary problem was contained to his left wrist and that other areas, including his back, neck, shoulders, and legs are all fine [and] that he did not experience significant difficulties in sitting, standing, and walking, nor was his right upper extremity adversely impacted." (Tr. 15). Additionally, the Plaintiff "admitted that he was released by his various treating physicians, including Dr. [Jungreis], who felt he was capable of returning to work at some modified level." (Tr. 15). Additionally, the Plaintiff admitted that "he drives a car, but stated he only drives with his right hand despite being left hand dominant." (Tr. 15).

The ALJ considered the Plaintiff's testimony about his daily activities. While the performance of everyday tasks cannot be used to make a determination the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). See also Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination); SSR 96-7p (the inconsistency

of the Plaintiff's own statements with information contained in the record bears upon her

credibility).  With regard to his daily activities, the Plaintiff

> testified that he generally watches 4-5 hours of television on a
> daily basis.  He also admitted that he reads the Bible and sports
> magazines.  He is able to load the dishwasher and do laundry.  He
> admitted he is able to prepare meals such as baked chicken and is
> able to use the microwave oven.  The [Plaintiff] testified that he is
> unable to do things such as cutting a steak and he has problems
> holding a knife.  He is also unable to hold a cup of coffee with his
> left hand.  He admitted he is able to button his clothes with both
> hands.  The [Plaintiff] stated that his son does the yard work but he
> is able to do things such as pulling weeds with his right hand.  The
> [Plaintiff] testified that he is able to do small things such as shave a
> little bit with his left hand, move a pillow or drag a blanket with
> his left hand.

(Tr. 15–16).  The ALJ also took into consideration that the Plaintiff has applied for jobs at Wal-

Mart, McDonalds, and Burger King.  (Tr. 16).  He testified that he has also applied at several

department stores for sales type positions and with the Florida Division of Vocational

Rehabilitation.

After review of the record, the Undersigned finds that the ALJ's reasons for discounting

the Plaintiff's testimony are clearly articulated and supported by substantial evidence.


<u>CONCLUSION</u>

Accordingly it is now

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Fort Myers, Florida, this 13th day of April, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of Record